JOHN D. FREED (CA State Bar No. 261518)
jakefreed@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, Floor 23
San Francisco, California 94111
Telephone: (415) 276-6500
Fax: (415) 276-6599

Attorneys for Plaintiff
BOILING CRAB FRANCHISE CO., LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOILING CRAB FRANCHISE CO., LLC,<br>Plaintiff,<br>vs.<br><br>LE NGUYEN FAMILY LLC; LE RESTAURANT INC.; NT RESTAURANT INC.; and CRAB PUB INC.,<br>Defendants. | Case No. '26CV6466 RSH JLB<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Boiling Crab Franchise Co., LLC ("Plaintiff") brings this complaint against Defendants Le Nguyen Family LLC ("LNF"), Le Restaurant Inc. ("LRI"), NT Restaurant Inc. ("NTR"), and Crab Pub, Inc. ("CPI") (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. Since 2004, consumers have relied on Plaintiff's strong and inherently distinctive THE BOILING CRAB® trademarks to identify Plaintiff's iconic and critically acclaimed restaurants. Plaintiff's THE BOILING CRAB® marks, including in stylized THE BOILING CRAB and logo formats,

embody a sterling reputation for industry-leading Cajun-influenced, Louisiana-style seafood that extends nationwide due to the consistently high-quality cuisine and services offered at THE BOILING CRAB® restaurants, Plaintiff's long-time efforts to advertise and promote the same, and the extensive renown Plaintiff's THE BOILING CRAB® restaurants hold among the consuming public.

2. This lawsuit arises from Defendants' unauthorized use of the CRAB PUB mark in confusingly similar stylized formats and logos, including













in connection with restaurants in Oceanside, San Diego, and National City, California, that provide virtually identical restaurant services to those offered by Plaintiff, as well as Defendant Le Nguyen Family LLC's efforts to seek federal trademark protection for same.

3. Plaintiff brings this lawsuit for trademark infringement, unfair competition, and refusal of applications for federal trademark registration to prevent Defendants from causing future harm to Plaintiff's customers, reputation, and trademarks, and to hold Defendants accountable for their illegal actions.

**PARTIES**

4. Boiling Crab Franchise Co., LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Huntington Beach, California. Plaintiff, through its authorized licensees, offers restaurant services and related goods and services in commerce under the trademark THE BOILING CRAB®, which has been used by Plaintiff

(itself and through its licensees and predecessor in interest) since 2004.

5. On information and belief, Defendant LNF is a limited liability company organized under the laws of the State of California, with its principal place of business at 3766 Mission Ave, #111, Oceanside, California 92058.

6. On information and belief, Defendant LRI is a corporation organized under the laws of the State of California, with its principal place of business at 2734 Bayside Ln, San Diego, California 92109. Although LRI filed a certificate of dissolution with the California Secretary of State on or about March 1, 2026, LRI continues to exist pursuant to Cal. Corp. Code §§ 1905(b) and 2010(a) for the purposes of, among other things, defending actions against it, discharging obligations and engaging in other actions necessary for its winding up. As recently as October 13, 2026, LRI entered into a Trademark Assignment agreement with the other defendants purportedly assigning LRI's rights in the infringing marks that are the subject of this action to LNF. Therefore, LRI is properly named as a defendant.

7. On information and belief, Defendant NTR is a corporation organized under the laws of the State of California, with its principal place of business at 3030 Plaza Bonita Rd., Ste. 1430, National City, California 91950.

8. On information and belief, Defendant CPI is a corporation organized under the laws of the State of California, with its principal place of business at 6011 El Cajon Blvd., Suite 107, San Diego, California 92115.

9. On information and belief, Defendants are commonly managed, owned, or controlled by Nicky Le and her son Kyle T. Le.

10. On information and belief, Nicky Le is the CEO, Chief Financial Officer, President, and sole director and shareholder of CPI, NTR and LRI.

11. On information and belief, Kyle T. Le is CEO and a member/manager of LNF.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), and 15 U.S.C. § 1121 because it arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*. Jurisdiction over the California state law claim is also appropriate because the claim is so related to the claims brought under the Lanham Act that they form part of the same case or controversy, and hence falls within the scope of this Court's supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367.

13. This Court has personal jurisdiction over Defendants because, on information and belief, Defendants maintain their principal places of business in this District and provide, advertise, offer to sell, and sell goods and services using infringing marks from this District and to consumers within this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c), and (d), because Defendants maintain their principal places of business in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants are subject to personal jurisdiction in this District with respect to the claims at issue.

## STATEMENT OF FACTS

### *THE BOILING CRAB*® CHAIN OF RESTAURANTS

15. Plaintiff owns and is in the business of administering the franchising and licensing of the intellectual property associated with THE BOILING CRAB® restaurant concept.

16. In 2004, Plaintiff, through its predecessor in interest, opened the first THE BOILING CRAB® restaurant in Garden Grove, California. Attached hereto as Exhibit A is a true and correct photograph showing the exterior of the original Garden Grove location at the time it first opened.

17. Plaintiff has since expanded its chain to include locations throughout the United States, including 19 locations in California, as well as locations in

Dallas, Plano, and Austin, Texas; Las Vegas, Nevada; Honolulu, Hawaii; Miami, Florida; Washington, D.C.; Cambridge, Massachusetts; and Richmond, Virginia.

18. Plaintiff's THE BOILING CRAB® restaurants offer a unique selection of Cajun-influenced, Louisiana-style seafood, including blue crab, oysters, Dungeness crab, shrimp, and crawfish seasoned with Plaintiff's distinctive blends of spices and seasonings. Representative examples of the dine-in menus used at Plaintiff's restaurants over the years are attached hereto as Exhibit B.

19. Since at least as early as 2004, Plaintiff has consistently used THE BOILING CRAB® in certain stylizations, colors and configurations, including in red and blue stylized form utilizing the Tekton font and as part of a logo incorporating a red crab design. Examples of exterior signage illustrating these uses and others are attached hereto as Exhibit C.

20. Plaintiff is the owner of the following federal registrations for its THE BOILING CRAB® trademarks (collectively, "Plaintiff's Marks"):

| Mark | Reg. No. | Goods & Services |
|---|---|---|
| THE BOILING CRAB | 3256219[1] | Restaurant Services |
| The Boiling Crab | 4174077[2] | Restaurant Services |
| THE BOILING CRAB | 4491054 | Restaurant Services |
| The Boiling Crab | 5374534 | Restaurant Services |

[1] Registration No. 3256219 is for the phrase THE BOILING CRAB in standard characters without claim to any particular font style, size, or color. Thus, it covers use of the phrase in any font style, size or color.

[2] Registration No. 4174077 is for the depicted logo without a claim of any particular color. Thus it covers use of the logo in any color or combination of colors.

True and correct copies of the registration certificates issued by the U.S. Patent and Trademark Office for each of these registrations are attached hereto as Exhibit D.

21. Each of Plaintiff's above-referenced federal registrations was approved and registered without the U.S. Patent and Trademark Office requiring a claim or showing of secondary meaning, and has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Thus, each constitutes conclusive evidence that the recited marks are valid, inherently distinctive, and that Plaintiff is entitled to exclusive use of the recited marks in commerce throughout the United States for restaurant services.

22. Plaintiff's restaurants have consistently featured bibs, cups, uniforms, t-shirts, signage and/or other collateral branded with Plaintiff's Marks. True and correct copies of illustrative examples of Plaintiff's branded collateral, which are often incorporated into Plaintiff's advertising and social media, are below and attached hereto as Exhibit E:










23. Plaintiff has expended considerable money, time, and effort using Plaintiff's Marks to promote and advertise its restaurants, further contributing to the restaurants' recognition and success.

24. Plaintiff has also used Plaintiff's Marks extensively on the internet and, as a result, the marks have developed a strong internet presence and recognition by

consumers who use the internet. Plaintiff is the registrant of the domain names <theboilingcrab.com> and <boilingcrab.com> and owns and operates a website at these domain names in order to promote and provide consumers with information concerning Plaintiff's restaurants. A true and correct copy of the home page of Plaintiff's website at www.theboilingcrab.com is attached hereto as Exhibit F.

25. Plaintiff also uses Plaintiff's Marks extensively on the internet through popular social networking sites including Facebook, X (formerly known as Twitter), YouTube, Instagram, and TikTok, among others. Plaintiff maintains these active social media accounts in order to further promote Plaintiff's Marks and to promote and provide information about its restaurants.

26. Plaintiff's marks and restaurants have also received unsolicited attention from, and positive recognition by, the media, which has further contributed to consumers' widespread recognition of Plaintiff's Marks.

27. Through Plaintiff's extensive use, marketing, branding, and promotion, Plaintiff's Marks are recognized by the consuming public and enjoy substantial recognition, goodwill, and association with Plaintiff's restaurant chain. The public distinguishes Plaintiff's goods and services from those of others on the basis of Plaintiff's Marks.

28. Plaintiff's Marks are both inherently distinctive and commercially strong in connection with restaurant services, and related goods and services.

## DEFENDANTS' WRONGFUL CONDUCT

29. Defendants, on information and belief, operate restaurants at 3766 Mission Ave, #111, Oceanside, California 92058, 3030 Plaza Bonita Rd, #1430, National City, California 91950, and 6011 El Cajon Blvd, #107, San Diego, California 92115 under names and marks that comprise or contain CRAB PUB displayed in the same Tekton font used by Plaintiff, including as part of a logo incorporating a crab design, in colors primarily comprised of blue and red (the "Infringing Marks").

30. The Infringing Marks used by Defendants are confusingly similar in appearance, pronunciation and overall commercial impression to Plaintiff's Marks, as illustrated by the following representative examples of Plaintiff's Marks used on Plaintiff's signage and Defendants' Infringing Marks used on Defendants' signage:

**Plaintiff's Genuine Signage**












**Defendants' Infringing Signage**













31. On information and belief, Defendants use the Infringing Marks in connection with the offer and sale of restaurant services featuring the same type of Cajun-influenced, Louisiana-style seafood offered by Plaintiff under Plaintiff's Marks, as illustrated by the examples of Defendants' menus attached hereto as Exhibit G.

32. Defendants' first use of the Infringing Marks in connection with Defendants' restaurant services occurred long after Plaintiff's first use and/or registration of Plaintiff's Marks in connection with restaurant services.

33. Based on the confusing similarity between the Infringing Marks and Plaintiff's Marks—including but not limited to the parties' shared use of logos incorporating the term "CRAB," similar red-and-blue color schemes, identical stylized lettering, and similar red crab imagery—and the parties' provision of

substantially identical restaurant services featuring Cajun-influenced, Louisiana-style seafood, consumers encountering the Infringing Marks used in connection with Defendants' restaurants are likely to mistakenly believe that Defendants' restaurants are owned, operated, sponsored, authorized, licensed, or approved by Plaintiff, or are otherwise affiliated with Plaintiff and its THE BOILING CRAB® restaurant chain, when they are not.

34. Among other things, due to the confusing similarity between the Infringing Marks and Plaintiff's Marks, consumers are likely to mistakenly believe that Defendants' CRAB PUB restaurants constitute a new, more casual, pub-focused extension, spin-off, or sub-brand of Plaintiff's THE BOILING CRAB® brand, developed to offer the same or related seafood cuisine and dining experience in a bar- or pub-oriented format. Consumers are further likely to attribute the services, food quality, business practices, and overall customer experience associated with Defendants' restaurants to Plaintiff.

35. On information and belief, at the time Defendants adopted and began using the Infringing Marks, Defendants knew of Plaintiff, Plaintiff's restaurants, Plaintiff's website, as well as Plaintiff's ownership, use and superior rights in Plaintiff's Marks, and knew or should have known that the unauthorized use of the Infringing Marks in connection with the advertising, promotion, offer or sale of Defendants' restaurant services was in violation of Plaintiff's rights in the same.

36. On information and belief, Defendants' adoption and use of the Infringing Marks were in bad faith and undertaken with the deliberate intent to trade on Plaintiff's goodwill, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's goods and services to Defendants. Thus, Defendants' infringing conduct in adopting and using the Infringing Marks as alleged herein was intentional and willful.

37. Accordingly, Defendants' use of the Infringing Marks as alleged herein is likely to cause confusion, mistake, and deception among the relevant consuming

public as to the source, quality, and nature of Defendants' goods and services, and is likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' restaurant services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff, thereby proximately causing injury to Plaintiff and its trademark rights.

38. Defendants' acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public, for which Plaintiff has no adequate remedy at law.

**DEFENDANTS' RELATIONSHIP, STRUCTURE, AND COORDINATED USE OF THE INFRINGING MARKS**

39. On information and belief, Defendant CPI is, and holds itself out as, responsible for the operations of the San Diego CRAB PUB restaurant location. Accordingly, Defendant CPI is directly liable for the use of the Infringing Marks on or in connection with the goods and services provided at the San Diego location.

40. On information and belief, Defendant NTR is, and holds itself out as, responsible for the operations of the National City CRAB PUB restaurant location. Among other things, according to the online records maintained by ABC, NTR is the named holder of the issued license for the on-premises sale of beer and wine at the National City location. Accordingly, Defendant NTR is directly liable for the use of the Infringing Marks on or in connection with the goods and services provided at the National City location.

41. On information and belief, Defendant LRI, prior to February 25, 2026, was, and held itself out as, responsible for the operations of the Oceanside CRAB PUB restaurant location. Among other things, according to the online records maintained by ABC, LRI was the named holder of the issued license for the on-premises sale of beer and wine at the Oceanside location prior to the transfer of the license to Defendant LNF on or about February 25, 2026. Accordingly, Defendant

LRI is directly liable for the use of the Infringing Marks on or in connection with the goods and services provided at the Oceanside location on or before February 25, 2026.

42. On information and belief, since on or about February 25, 2026, Defendant LNF has been, and has held itself out as, responsible for the operations of the Oceanside CRAB PUB restaurant location. Among other things, according to the online records maintained by ABC, LNF is the named holder of the issued license for the on-premises sale of beer and wine at the Oceanside location since the transfer of the license from Defendant LRI on or about February 25, 2026. Accordingly, Defendant LNF is directly liable for the use of the Infringing Marks on or in connection with the goods and services provided at the Oceanside location on or after February 25, 2026.

43. On information and belief, Defendant LNF, which was incorporated on or about April 24, 2025, currently claims ownership of the stylized CRAB PUB marks and CRAB PUB and design marks that comprise the Infringing Marks and has filed U.S. trademark applications, Serial Nos. 99/920,948 and 99/920,955, covering those marks in connection with restaurant services.

44. On information and belief, on or about October 13, 2026, CPI, NTR and LRI entered into a “Trademark Assignment” that purports to assign to LNF *nunc pro tunc* as of April 24, 2025, all purported right, title, interest, and goodwill CPI, NTR and LRI claimed in the Infringing Marks in connection with restaurant services as a result of their prior use of the Infringing Marks in connection with restaurant services at, respectively, the San Diego, National City and Oceanside locations.

45. To the extent any valid assignment occurred, LNF took any purported rights in the Infringing Marks subject to and, on information and belief, with actual or constructive knowledge of Plaintiff’s prior and superior rights in Plaintiff’s Marks.

46. On information and belief, LNF acquired or claimed to acquire rights in the Infringing Marks from one or more of the other Defendants with actual or constructive knowledge of their prior infringing use and the likelihood of confusion with Plaintiff's Marks.

47. On information and belief, LNF did not create a new and independent restaurant brand; instead, it continued, ratified, and attempted to formalize the same restaurant enterprise previously conducted by its assignors and affiliates under the Infringing Marks.

48. Accordingly, any successor-in-interest status claimed by LNF does not cure the prior infringement of the assigning Defendants; rather, to the extent a valid assignment occurred, it confirms continuity between the pre-assignment infringing uses and LNF's post-assignment ownership claims, authorizations, and ratifications. Thus, LNF is liable as successor-in-interest for any use of the Infringing Marks by its assignors on or in connection with the goods and services provided at the San Diego, National City, and Oceanside locations that occurred on or before taking assignment of the Infringing Marks.

49. On information and belief, to the extent a valid assignment occurred, since taking assignment of any purported rights in the Infringing Marks, LNF approved, licensed, ratified, or otherwise permitted the use of the Infringing Marks on signage, menus, advertising, and online branding at the Oceanside, National City, and San Diego restaurants.

50. On information and belief, to the extent a valid assignment occurred, LNF's authorization was express or implied and constituted a license or other permission for CPI and NTR to use the Infringing Marks in connection with restaurant services.

51. On information and belief, to the extent a valid assignment occurred, LNF exercised or had the right to exercise direct control and monitoring over use of the Infringing Marks by CPI and NTR, including the ability to approve, modify,

require removal of, or terminate use of the Infringing Marks.

52. On information and belief, LNF knew of specific infringing uses of the Infringing Marks, including on signage, menus, online listings, and restaurant advertising, yet continued to authorize, supply, license, or ratify that use after obtaining or claiming the assigned Infringing Marks.

53. By supplying, authorizing, licensing, ratifying, and continuing the use of the Infringing Marks, LNF is contributorily liable for the infringing uses by CPI and NTR and/or their agents and personnel.

54. On information and belief, to the extent any valid assignment occurred, prior to the assignment of any rights in the Infringing Marks to LNF, one or more of CPI, LRI, and/or NTR approved, licensed, ratified, or otherwise permitted the use by the others of the Infringing Marks on signage, menus, advertising, and online branding at the Oceanside, National City, and San Diego restaurants.

55. On information and belief, such authorization was express or implied and constituted a license or other permission for the others to use the Infringing Marks in connection with restaurant services.

56. On information and belief, as a result of such authorization, one or more of CPI, LRI and/or NTR exercised or had the right to exercise direct control and monitoring over use of the Infringing Marks by the others, including the ability to approve, modify, require removal of, or terminate use of the Infringing Marks.

57. On information and belief, one or more of CPI, NTR and LRI knew of specific infringing uses of the Infringing Marks, including on signage, menus, online listings, and restaurant advertising, yet continued to authorize, supply, license, or ratify that use after obtaining or claiming the assigned Infringing Marks.

58. By supplying, authorizing, licensing, ratifying, and continuing the use of the Infringing Marks, one or more of CPI, NTR and LRI are contributorily liable for the infringing uses by the others and/or their agents and personnel.

59. In the alternative, if no valid assignment of rights in the Infringing

Marks together with associated goodwill to LNF occurred, LNF never acquired, and was not and is not the owner of, any rights in the Infringing Marks, and the contributory liability of one or more of CPI, NTR LRI for the infringing uses by the others and/or their agents and personnel would continue to this day.

60. Additionally, on information and belief, prior to the formation of and/or assignment of the Infringing Marks to LNF, Defendants CPI, LRI, and NTR, and after such formation and/or assignment, Defendants collectively, operated and held out the Oceanside, National City, and San Diego restaurants as parts of a single restaurant enterprise operating under the Infringing Marks.

61. On information and belief, prior to the formation of and/or assignment of the Infringing Marks to LNF, Defendants CPI, LRI, and NTR, and after such formation and/or assignment, Defendants collectively, jointly owned, managed, controlled, authorized, and benefited from the public-facing branding under the Infringing Marks, including on signage, menus, trade dress, advertising, social-media accounts, and online listings.

62. On information and belief, each participant in the collective enterprise had authority to bind one another, or appeared to the public and to third parties to have authority to bind one another, with respect to the identity, branding, and licensing, of the restaurant services provided under the Infringing Marks.

63. On information and belief, the assignment or purported assignment to LNF of rights in the Infringing Marks was part of a unified brand structure under which LNF held or claimed title to the marks while the affiliated Defendants continued the same infringing restaurant services.

64. Accordingly, in addition to any direct and contributory liability, Defendants CPI, LRI, and NTR prior to the formation and/or assignment, and all Defendants afterwards, are vicariously liable for the infringing uses by the others and/or their agents and personnel.

## FIRST CLAIM FOR RELIEF

## (Trademark Infringement under the Lanham Act)

## 15 U.S.C. § 1114(1)

65. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 64, as if set forth fully herein.

66. This claim is for trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

67. The Infringing Marks are reproductions, copies, or colorable imitations of Plaintiff's Marks, each of which is the subject of a valid, subsisting and incontestable federal registration.

68. Defendants have used and are using in interstate commerce the Infringing Marks in connection with the sale, offering for sale, distribution, or advertising of restaurant services, in such a way as is likely to cause confusion, to cause mistake, and/or to deceive the consuming public.

69. Each Defendant directly used the Infringing Marks in commerce, or is liable for such use under the direct, contributory, vicarious, and/or successor theories alleged herein.

70. Plaintiff never consented to or authorized Defendants' adoption or commercial use of the Infringing Marks for any purpose. Defendants therefore have infringed and are infringing Plaintiff's Marks in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

71. Upon information and belief, at all times relevant to this action, including when Defendants first adopted the Infringing Marks and commenced commercial use of the same in connection with restaurant services (the "Infringing Services"), Defendants knew of Plaintiff's prior adoption and widespread commercial use of Plaintiff's Marks in connection with restaurant services and related goods and services, knew of the valuable goodwill and reputation acquired by Plaintiff in connection with its trademarks, knew Plaintiff's Marks were the

subject of valid and subsisting federal registrations, and knew or should have known that the unauthorized use of the Infringing Marks was likely to cause confusion and constitute a violation of Plaintiff's rights in Plaintiff's Marks. Accordingly, Defendants' infringement of Plaintiff's Marks is willful and deliberate.

72. Plaintiff has no control over the quality of Defendants' Infringing Services and, because of the source confusion engendered by Defendants' willful trademark infringement, Plaintiff's valuable goodwill in and to Plaintiff's Marks is being significantly harmed. Upon information and belief, Defendants' use of the Infringing Marks, in imitation of Plaintiff's Marks, has caused, and will continue to cause, actual confusion, mistake, and deception to purchasers as to the source and origin of Defendants' Infringing Services.

73. Defendants' activities are intended, and are likely, to lead the public to conclude, incorrectly, that the Infringing Services originate with, are sponsored by, and/or are authorized by Plaintiff, when they do not, to the damage and harm of Plaintiff and the consuming public. Thus, Defendants' activities constitute willful and deliberate infringement.

74. Plaintiff has no adequate remedy at law and, if Defendants' wrongful use of the Infringing Marks is not enjoined, Plaintiff will suffer irreparable harm and injury, including to its goodwill and reputation.

75. This is an exceptional case, further entitling Plaintiff to additional remedies and also entitling Plaintiff to recover its attorneys' fees and costs incurred in prosecuting this action and stopping Defendants' willful infringement pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

**(Unfair Competition under the Lanham Act)**

**15 U.S.C. § 1125(a)(1)(A)**

76. Plaintiff realleges and incorporates by reference the allegations in

paragraphs 1 through 75, as if set forth fully herein.

77. Plaintiff's Marks are nonfunctional and distinctive to both the consuming public and Plaintiff's trade.

78. Plaintiff's Marks have, through Plaintiff's long, widespread and exclusive use and promotion, obtained extensive recognition among a substantial portion of the relevant consuming public as a strong designation used to identify and distinguish the source of Plaintiff's goods and services from those of others.

79. Due to their confusing similarity to one or more of Plaintiff's Marks, Defendants' use of the Infringing Marks is likely to cause confusion, mistake, and/or to deceive the consuming public as to the affiliation, connection, and/or association between Defendants' restaurant services and Plaintiff and Plaintiff's Marks. Thus, Defendants' unauthorized use of the Infringing Marks constitutes unfair competition and false designation of origin of Defendants' products and services in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

80. Each Defendant's conduct contributes to the false designation of origin and false association alleged herein.

81. Defendants' conduct is actionable directly and, in the alternative, under contributory, vicarious, and/or successor theories alleged herein.

82. On information and belief, at all times relevant to this action, including at the time Defendants first adopted and began using without authorization the Infringing Marks, Defendants knew of Plaintiff's prior adoption and widespread commercial use of Plaintiff's Marks, and knew of the valuable goodwill and reputation acquired by Plaintiff in connection with Plaintiff's Marks. Thus, Defendants' unfair competition and false designation of origin are knowing, willful, and deliberate.

83. Defendants' false designation of origin and false association were knowing, willful, and deliberate because Defendants knew of Plaintiff's prior

adoption and widespread use of Plaintiff's Marks, knew of the specific uses of the Infringing Marks at the San Diego, National City, and Oceanside locations, and continued to use, authorize, license, ratify, or claim rights in the Infringing Marks despite that knowledge.

84. Plaintiff has no adequate remedy at law and, if Defendants' wrongful use of the Infringing Marks is not enjoined, Plaintiff will suffer irreparable harm and injury, including to its goodwill and reputation.

85. This is an exceptional case, further entitling Plaintiff to additional remedies and also entitling Plaintiff to recover its attorneys' fees and costs incurred in prosecuting this action and stopping Defendants' unfair competition pursuant to 15 U.S.C. § 1117.

**THIRD CLAIM FOR RELIEF**

**(Unfair Competition Under State Law)**

**Cal. Bus. & Prof. Code § 17200**

86. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 85, as if set forth fully herein.

87. Defendants' conduct constitutes unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code § 17200.

88. Defendants' conduct is unlawful because Defendants directly infringed, falsely designated the origin of, or are secondarily liable for the use of the Infringing Marks with restaurant services as alleged herein.

89. Defendants' conduct is unfair because consumers are likely to be deceived into believing that the goods and services provided under the Infringing Marks are provided by, sponsored, approved, licensed, or affiliated with, Plaintiff.

90. Each Defendant is liable under the UCL because each Defendant directly participated in, authorized, controlled, ratified, benefited from, or continued use of the Infringing Marks with restaurant services as alleged herein.

91. As a consequence of Defendants' unlawful, unfair, and/or fraudulent conduct, Plaintiff is entitled to injunctive relief, restitution and disgorgement to the fullest extent available under California law, an accounting of profits, revenues, royalties, license fees, intercompany transfers, and assets associated with the use of the Infringing Marks with restaurant services, and such other equitable relief as the Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

**(Refusal of Applications Ser. Nos. 99/920,948 and 99/920,955)**

**15 U.S.C. § 1119**

92. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 64, as if set forth fully herein.

93. On information and belief, Defendant LNF is listed in the records of the U.S. Patent and Trademark Office as owner of U.S. Trademark Application Ser. Nos. 99/920,948 and 99/920,955, filed on July 3, 2026 (the "Opposed Applications"), for, respectively, the marks CRAB PUB in standard characters, and CRAB PUB (stylized)[3], both in connection with *restaurant services* in International Class 43 (collectively, the "Disputed Marks").

94. Plaintiff's THE BOILING CRAB marks that are the subject of U.S. Registration Nos. 3256219, 4174077, 4491054 and 5374534 were all first used and/or federally registered prior to LNF's first use of and applications to register the

---

[3] Upon information and belief, because the drawing image file LNF submitted with Application Ser. No. 99/920,955 used a white background, the white and black outline that appears around all elements of the mark as used are not visible in the drawing, despite being specifically referenced in the application's description of the mark, which reads: "The mark consists of the dark blue wording 'CRAB' to the left of a red crab design, which is to the left of the dark blue wording 'PUB', with all elements having a white and black outline."

Disputed Marks. Accordingly, Plaintiff's rights in its registered THE BOILING CRAB marks are prior and senior to any rights LNF may claim in the Disputed Marks.

95. The Disputed Marks are confusingly similar in sight, sound, meaning and/or commercial impression to Plaintiff's THE BOILING CRAB marks of Registration Nos. 3256219, 4174077, 4491054 and 5374534. Indeed, because LNF's Application Ser. No. 99/920,948 covers the mark CRAB PUB in standard characters without claim to any particular font style, size, or color, it covers CRAB PUB used in the identical font styles, sizes or colors claimed in Plaintiff's U.S. Registration Nos. 4174077, 4491054 and 5374534 for the marks

THE BOILING CRAB and The Boiling Crab, including, by way of illustration, in the formats: CRAB PUB and Crab Pub.

96. The services recited in the Opposed Applications are identical to the services recited in Plaintiff's Registration Nos. 3256219, 4174077, 4491054 and 5374534.

97. The services recited in the Opposed Applications are unrestricted as to consumers and trade channels. As such, it is presumed for registration purposes that LNF's recited services are sold to all ordinary classes of consumers of such services, including consumers of the identical services recited in Plaintiff's Registration Nos. 3256219, 4174077, 4491054 and 5374534, and travel in all normal trade channels for such services, including trade channels through which Plaintiff provides its restaurant services under its registered THE BOILING CRAB marks.

98. Because the Opposed Applications for the Disputed Marks recite marks that so resemble Plaintiff's previously used and/or registered THE BOILING CRAB marks as to be likely, when used in connection with restaurant services, to cause confusion, mistake, or deception within the meaning of 15 U.S.C. § 1052(d),

the Opposed Applications should be refused registration.

99. Additionally, or in the alternative, on information and belief, LNF was not as of the filing date of the Opposed Applications, the owner of the Disputed Marks, because there was no valid assignment of any rights in the Disputed Marks and their associated goodwill from any of the other Defendants on or prior to July 3, 2026, and, as a result, one or more of the other Defendants owned and exercised control over the quality of the goods and services provided under the Disputed Marks at the time the applications were filed.

100. Pursuant to Section 1(a)(1) of the Trademark Act of 1946, 15 U.S.C. § 1051(a)(1), only the owner of the mark may file an application to register the mark.

101. Accordingly, because LNF was not the owner of the Disputed Marks at the time the Opposed Applications were filed, the applications are void ab initio and must be refused.

102. Plaintiff will be damaged by the registration sought by LNF insofar as LNF will obtain statutory rights in the Disputed Marks in violation and derogation of Plaintiff's prior and superior rights in its THE BOILING CRAB Marks. LNF is not entitled to registration of the Disputed Marks for restaurant services by virtue of Plaintiff's prior use and/or registration of THE BOILING CRAB marks for the identical restaurant services and/or LNF's lack of ownership at the time the Opposed Applications were filed.

103. Based on the foregoing, Plaintiff believes registration of the Disputed Marks, as claimed in the Opposed Applications in connection with restaurant services, is likely to cause injury and damage to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants Le Nguyen Family LLC, Le Restaurant Inc., NT Restaurant Inc., and Crab Pub Inc., and each of them, jointly and severally to the extent permitted by law and as supported by Plaintiff's direct-liability, contributory-liability, vicarious-liability, agency, alter-

ego, single-enterprise, successor, ratification, and active-participation allegations, as follows:

1. Entry of preliminary and/or permanent injunctions enjoining Defendants Le Nguyen Family LLC, Le Restaurant Inc., NT Restaurant Inc., and Crab Pub Inc., and each of their respective officers, directors, members, managers, agents, servants, employees, representatives, successors, assignees, licensees, franchisees, alter egos, affiliated entities, and all persons, firms, entities, partners, or corporations in active concert or participation with any of them, from doing, threatening, attempting to do, causing to be done, assisting, authorizing, licensing, ratifying, or contributing to, directly or indirectly, by any means, method, or device, any of the following acts:

(a) Directly or indirectly infringing, using, displaying, authorizing, licensing, ratifying, supplying, maintaining, or contributing to the use of Plaintiff's Marks, the Infringing Marks, or any mark confusingly similar thereto, in any manner or for any purpose, including in advertising, promoting, producing, distributing, selling, offering for sale, or giving away Defendants' products or services;

(b) Using any mark that is likely to be confused with Plaintiff's Marks in connection with restaurant services;

(c) Falsely representing, misleading, or deceiving consumers into believing that services or products advertised, promoted, produced, distributed, sold, or offered for sale by Defendants originate from Plaintiff or its THE BOILING CRAB restaurants, or are sponsored, approved, licensed by, or associated with Plaintiff or its THE BOILING CRAB restaurants, or that Defendants or their services or products are in some way associated or affiliated with Plaintiff or its THE BOILING CRAB restaurants;

(d) Filing for or maintaining any business license, d/b/a, trademark

registration or similar document using the Plaintiff's Marks or any mark confusingly similar thereto, including but not limited to the Infringing Marks;

(e) Committing any other acts calculated to or that do unfairly compete with Plaintiff in any manner or that constitute deceptive trade practices; and

(f) Transferring, assigning, licensing, encumbering, dissipating, concealing, or otherwise disposing of any rights, assets, revenues, profits, goodwill, licenses, applications, registrations, business records, signage, menus, advertising materials, domain names, social-media accounts, online listings, or other property associated with the Infringing Marks or the Defendants' restaurant enterprise except as ordered by the Court;

2. Ordering Defendants and all persons acting in concert with them to deliver up to Plaintiff for destruction, or otherwise dispose of as the Court directs, all goods, signs, advertisements, menus, literature, business forms, cards, labels, packaging, wrappers, pamphlets, brochures, receptacles, social-media content, online listings, website content, digital files, and any other written, printed, electronic, or digital materials in their possession, custody, or control that contain, display, or embody the Infringing Marks, or any colorable imitation of Plaintiff's Marks;

3. Ordering Defendants to file with this Court and serve on Plaintiff's counsel within thirty (30) days after the Court's issuance of a judgment, a report setting forth in detail the manner and form in which Defendants have complied with Paragraphs 1-2 of Plaintiff's Prayer for Relief;

4. Ordering Defendants to provide a verified accounting of all revenues, profits, royalties, license fees, intercompany transfers, asset transfers, goodwill transfers, and other benefits received, transferred, or controlled by any Defendant or

by any successor, assignee, licensee, alter ego, affiliate, agent, or active-concert person in connection with the Infringing Marks;

5. Directing the U.S. Patent and Trademark Office, Commissioner for Trademarks, to refuse U.S. Trademark Application Serial Nos. 99/920,948 and 99/920,955, and any and all other federal applications filed, maintained, assigned, licensed, or controlled by Defendants, their successors, assignees, licensees, agents, alter egos, affiliates, or persons in active concert with them for any mark likely to cause confusion with Plaintiff's THE BOILING CRAB marks, pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119;

6. Awarding Plaintiff all damages sustained by Plaintiff and all profits, gains, advantages, revenues, royalties, license fees, and other monetary benefits obtained by Defendants, and each of them, as a result of the acts complained of herein, including under 15 U.S.C. § 1117 and applicable state law, to be enhanced, trebled, or awarded as statutory damages to the extent permitted by law;

7. Imposing, to the extent permitted by law and supported by proof, a constructive trust, equitable lien, accounting, asset-preservation order, anti-dissipation order, or other equitable remedy over profits, proceeds, goodwill, transferred assets, successor assets, and other property derived from or traceable to Defendants' use of the Infringing Marks;

8. Awarding Plaintiff its attorneys' fees, costs, and disbursements incurred in this suit, in bringing this action for the legal enforcement of its trademark rights, and in connection with all efforts to stop Defendants' trademark infringement, unfair competition, and deceptive business practices;

9. Awarding Plaintiff interest, costs, and such other relief as the Court may deem just and equitable; and

10. For all such other, further, and different relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury of all issues so triable.

DATED: November 13, 2026

DAVIS WRIGHT TREMAINE LLP

By: ______________________
John D. Freed (CA Bar No. 261518)
jakefreed@dwt.com

50 California Street, Floor 23
San Francisco, California 94111
Telephone: (415) 276-6500
Fax: (415) 276-6599

Attorneys for Plaintiff
BOILING CRAB FRANCHISE CO., LLC

# EXHIBIT A

**Exhibit A**

**<u>Exterior of First THE BOILING CRAB Restaurant</u>**

<u>Original Façade</u>






<u>Current Facade</u>



# EXHIBIT B

**Exhibit B**

**<u>Genuine THE BOILING CRAB Menus</u>**





The Boiling Crab®

Your fresh catch is steamed or boiled in our Cajun-style blend of spices, then tossed with one of our signature seasonings and served in a bag to preserve the flavors!

## STEP 1: WHAT'S YOUR CATCH?

BLUE CRAB (Seasonal) ........ MARKET PRICE
OYSTERS* (Raw) ........ $ 11 / 6 pcs.
........ $ 19 / 12 pcs.
DUNGENESS CRAB (Seasonal) ........ MARKET PRICE
SNOW CRAB LEGS ........ MARKET PRICE
KING CRAB LEGS ........ MARKET PRICE
SOUTHERN KING CRAB LEGS ........ MARKET PRICE
LOBSTER (Seasonal) ........ MARKET PRICE
SHRIMP ........ MARKET PRICE
CRAWFISH (SEASONAL) ........ MARKET PRICE
CRAWFISH (FROZEN) ........ $ 9 / LB
CLAMS ........ $ 11 / LB
MUSSELS ........ $ 10 / LB

## STEP 2: WHAT'S YOUR FLAVOR?

RAJUN CAJUN (Original)
THE WHOLE SHA-BANG!® (Can't decide? Mix all three!)
LEMON PEPPER
GARLIC SAUCE

## STEP 3: HOW SPICY CAN YOU GO?

NON SPICY (Plain n' Simple)
MED (It's gettin' HOT n' here!)
MILD (Just a kick)
XXX (I can't feel my mouth!)

## WANT TO GET NAKED?

TBC NAKED™ CRAWFISH or SHRIMP
Both are available by the pound ONLY and include corn, potatoes, sausage and whole garlic cloves.

TBC HALF NAKED™ CRAWFISH or SHRIMP
Both are available by the pound ONLY and include corn, potatoes, sausage, and whole garlic cloves with our signature Lemon Pepper Seasoning.

Please ask your server for pricing.

## I LIKE IT FRIED!

Each selection is made to order, hand-tossed in our homemade batter and fried to perfection.
*All baskets include Cajun or LP Fries, no substitutes.*

FRIED SOFTSHELL CRAB BASKET* ........ $15
FRIED CATFISH BASKET* ........ $11
FRIED SHRIMP BASKET* ........ $11
CHICKEN TENDERS BASKET* ........ $9
KIDS' CHICKEN TENDERS* ........ $4.75
FRIED CALAMARI ........ $10
FRIED OYSTERS ........ $10
HOT WINGS (Cajun or Lemon Pepper) ........ $6.50 / regular
........ $9 / large

## EXTRAS

GUMBO W/ OR W/O RICE ........ $7 / cup
Extra shrimp OR sausage additional $.50
CAJUN CHOWDER ........ $8 / cup w/ rice
........ $8.25 / cup w/o rice
Extra shrimp OR sausage additional $.50
CORN ON THE COB ........ $ 1.25 / ea.
SAUSAGE ........ $9 / lb
POTATOES ........ $2.50 / 3 pcs.
CAJUN FRIES ........ $4
LEMON PEPPER FRIES ........ $4
SWEET POTATO FRIES ........ $4.95
STEAMED RICE ........ $2.25
EXTRA JUICY ........ $2.50 / cup
EXTRA CONDIMENTS ........ $ .75 / ea.
(Garlic Sauce, Ket/Mayo, Mayo, G's Sea-Sauce, BBQ, Ranch, Tartar, Cocktail)

## THIRSTY?

ASSORTED SODAS & TEAS ........ $2.75
DOMESTIC BEERS ........ $5
IMPORTED/SPECIALTY BEERS ........ $5.50

VISA | MasterCard | DISCOVER

*WARNING: This facility offers raw oysters from the Gulf of Mexico. Eating these oysters may cause severe illness and even death in persons who have liver disease, cancer or other chronic illnesses that weaken the immune system. If you eat raw oysters and become ill, you should seek immediate medical attention. If you are unsure if you are at risk, you should consult your physician.



The Boiling Crab®

## STEP 1: WHAT'S YOUR CATCH?

Your fresh catch is steamed or boiled in our Cajun-style blend of spices, then tossed with one of our signature seasonings.

| | |
|---|---|
| BLUE CRAB (60-780 cal) | MARKET PRICE |
| RAW OYSTERS* (120 cal) | $13.50 / 6 pcs. |
| (170 cal) | $24.00 / 12 pcs. |
| DUNGENESS CRAB (330-1790 cal) | MARKET PRICE |
| SNOW CRAB LEGS (160-820 cal) | MARKET PRICE |
| KING CRAB LEGS (190-870 cal) | MARKET PRICE |
| LOBSTER (210-1660 cal) | MARKET PRICE |
| SHRIMP (270-860 cal) | MARKET PRICE |
| CRAWFISH (60-780 cal) | MARKET PRICE |
| CRAWFISH (FROZEN, 70-790 cal) | MARKET PRICE |
| CLAMS (90-820 cal) | $12.00 / LB. |
| MUSSELS (160-870 cal) | $12.00 / LB. |

## STEP 2: WHAT'S YOUR FLAVOR?

RAJUN CAJUN (Original)

LEMON PEPPER

GARLIC SAUCE

THE WHOLE SHA-BANG!® (Can't decide? Mix all three!)

EXTRA JUICY (820 cal) ........ $2.50

WILL BE ADDED TO SEAFOOD BAG ONLY. LIMITATIONS APPLY.

## STEP 3: HOW SPICY CAN YOU GO?

NON-SPICY (Plain & simple)

MILD (Just a kick)

MEDIUM (It's getting hot in here!)

XXX (I can't feel my mouth!)

## WANT TO GET NAKED?

TBC NAKED™ CRAWFISH or SHRIMP (300-530 cal)
Peel & eat crawfish or shrimp. Made without our signature sauces. Includes corn, potato, sausage, and whole garlic cloves. Both are available by the pound ONLY.

TBC HALF NAKED™ CRAWFISH or SHRIMP (380-530 cal)
Peel & eat crawfish or shrimp. Made with our signature Lemon Pepper seasoning. Includes corn, potato, sausage, and whole garlic cloves. Both are available by the pound ONLY.

seasonal

Please ask your server for pricing.

*WARNING: This facility offers raw oysters from different regions of the USA such as, but not limited to, the Pacific Northwest, East Coast, and Gulf of Mexico. Eating these oysters may cause severe illness and even death in persons who have liver disease, cancer or other chronic illnesses that weaken the immune system. If you eat raw oysters and become ill, you should seek immediate medical attention. If you are unsure if you are at risk, you should consult your physician.



## I LIKE IT FRIED!

Each selection is made to order, hand-tossed in our homemade batter and fried to perfection. *All baskets include Cajun or LP fries (no substitutions).*

| | |
|---|---|
| FRIED SOFTSHELL CRAB BASKET* (830 cal) | $15.00 |
| FRIED CATFISH BASKET* (1570 cal) | $11.00 |
| FRIED SHRIMP BASKET* (980 cal) | $12.00 |
| CHICKEN TENDERS BASKET* (1180 cal) | $9.00 |
| KIDS' CHICKEN TENDERS BASKET* (850 cal) | $4.75 |
| FRIED CALAMARI (810 cal) | $10.00 |
| FRIED OYSTERS (440 cal) | $10.00 |
| HOT WINGS (CAJUN or LEMON PEPPER, 820 cal) | $9.00 / 6 pcs. |
| (CAJUN or LEMON PEPPER, 1260 cal) | $14.00 / 10 pcs. |

fried catfish basket

cajun fries (below)

hot wings

## EXTRAS

| | |
|---|---|
| GUMBO W/ or W/O RICE (130-180 cal) | $7.00 |
| EXTRA SHRIMP or SAUSAGE | $0.50 |
| CAJUN CHOWDER W/ or W/O RICE (420-430 cal) | $8.00 |
| EXTRA SHRIMP or SAUSAGE | $0.50 |
| CORN ON THE COB (90-270 cal) | $1.50 / ea. |
| SAUSAGE (540 cal) | $5.50 / link |
| POTATOES (190-550 cal) | $2.50 / 3 pcs. |
| CAJUN FRIES (580 cal) | $5.00 |
| LEMON PEPPER FRIES (580 cal) | $5.00 |
| SWEET POTATO FRIES (690 cal) | $5.50 |
| STEAMED RICE (370 cal) | $2.50 |
| EXTRA CONDIMENTS (70-400 cal) | $0.75 / ea. |

Garlic Sauce, Ketchup/Mayo, Mayo, G's Sea-Sauce, BBQ, Ranch, Tartar, Cocktail

## THIRSTY?

| | |
|---|---|
| ASSORTED SODAS & TEAS (0-310 cal) | $3.00 |
| DOMESTIC BEERS (105-170 cal) | $5.00 |
| IMPORTED/SPECIALTY BEERS (96-247 cal) | $5.50 |
| MICHELADA (230 cal) | $9.00 |
| MARGARITA (380 cal) | $10.00 |

AVISO IMPORTANTE: Esta instalación ofrece ostras crudas de diferentes regiones de los USA tales como, pero no limitadas, al Noroeste del Pacífico, Costa Este y el Golfo de México. El comer estas ostras crudas pueden causar una enfermedad grave y hasta la muerte en las personas que padecen de enfermedades del hígado, cáncer u otras enfermedades crónicas que debilitan el sistema inmunológico. Si usted come ostras crudas y se enferma debe buscar atención medica inmediatamente. Si usted cree estar en peligro, debe consultar a un medico.

# THE BOILING CRAB®

San Diego, CA • (858) 695-9025

## GIT DOWN 'N' DIRTY...

Your fresh catch is steamed or boiled in our Cajun-style blend of spices, then tossed with one of our signature seasonings for some dirty fun.

Raw Oysters† (120 cal) ........ $18.00 / 6 pcs.
(170 cal) ........ $32.00 / 12 pcs.
Blue Crab (60-780 cal) (seasonal) ........ $ Market Price
Dungeness Crab (330-1790 cal) (seasonal) ........ $ Market Price
Snow Crab Legs (100-820 cal) ........ $ Market Price
King Crab Legs (100-870 cal) ........ $ Market Price
Lobster (210-1660 cal) (seasonal) ........ $ Market Price
Shrimp (270-860 cal) ........ $ Market Price
Crawfish (60-780 cal) (seasonal) ........ $ Market Price
Crawfish (FROZEN, 70-790 cal) ........ $ Market Price
Clams (90-820 cal) ........ $16.00 / LB.
Mussels (160-870 cal) ........ $16.00 / LB.

## TOSS IN SOME EXTRAS!

Corn on the Cob (90-270 cal) ........ $2.00 / each
Sausage (540 cal) ........ $8.00 / link
Potatoes (190-550 cal) ........ $2.50 / 3 pcs.
Hard-Boiled Eggs (240 cal) ........ $5.00 / 3 eggs

## PICK A SEASONING!

Rajun Cajun (original)
Lemon Pepper
Garlic Butter
The Whole Sha-Bang!® (mix all three)

Extra Juicy (1820 cal) ........ $5.00
Will be added to seafood bag only, limitations apply.

## HOW SPICY CAN YOU GO?

NON SPICY (plain 'n' simple)
MILD (just a kick)
MEDIUM (it's gettin' HOT 'n here)
XXX (I can't feel my mouth)

†WARNING: This facility offers raw oysters from different regions of the USA such as, but not limited to, the Pacific Northwest, East Coast, and Gulf of Mexico. Consuming these oysters and any raw or undercooked meats, poultry, seafood, shellfish, or eggs may cause severe illness and even death in persons who have liver disease, cancer or other chronic illnesses that weaken the immune system. If you eat raw oysters and become ill, you should seek immediate medical attention. If you are unsure if you are at risk, you should consult your physician.

## I LIKE IT FRIED!

Each selection is made to order, hand-tossed in our homemade batter and fried to perfection. Baskets with (*) include Cajun or LP fries (no substitutions).

Fried Softshell Crab Basket* (830 cal) ........ $16.00
Fried Catfish Basket* (1570 cal) ........ $14.00
Fried Shrimp Basket* (1530 cal) ........ $16.00
Fried Scallop Basket* (1430 cal) ........ $19.00
Chicken Tenders Basket* (1180 cal) ........ $14.00
Kids' Chicken Tenders Basket* (650 cal) ........ $7.50
Fried Calamari (810 cal) ........ $12.00
Fried Oysters (440 cal) ........ $13.00
Sha-Bang Bang Shrimp (1000 cal) ........ $14.00
Sha-Bang Bang Scallops (900 cal) ........ $19.00
Hot Wings (CAJUN or LEMON PEPPER, 820 cal) ........ $12.50 / 6 pcs.
(CAJUN or LEMON PEPPER, 1260 cal) ........ $21.00 / 10 pcs.
Crabber Fries (1290 cal) ........ $16.00
(800 cal) ........ $10.00 / half order
Onion Rings (720-770 cal) ........ $9.00
Cajun or Lemon Pepper Fries (580 cal) ........ $7.00
Sweet Potato Fries (690 cal) ........ $7.50

## SOME SIDES

Gumbo (130-180 cal) ........ $9.00
Extra Shrimp or Sausage ........ $0.50
Steamed Rice (370 cal) ........ $2.50
Extra Condiments (70-400 cal) ........ $0.75 / each
Garlic Butter, Ketchup/Mayo, Mayo, G's Sea-Sauce, BBQ, Ranch, Tartar, Cocktail, Garlic Aioli

## THIRSTY?

Assorted Sodas & Teas (0-310 cal) ........ $3.00
Coke, Diet Coke, Coke Zero, Sprite, Root Beer, Dr. Pepper, Hi-C Fruit Punch, Orange Fanta, Minute Maid Lemonade, Pink Lemonade, Black Tea (Sweetened), Raspberry Tea (Sweetened)
Domestic Beers (110 cal) ........ $7.50
Bud Light
Imported / Specialty Beers (130-229 cal) ........ $8.00
Blue Moon, Cali Creamin', Corona, Dos Equis, Elysian Space Dust IPA, Heineken, Modelo Especial, Pacifico, Stella Artois
Tall Boy Cans ........ $9.00
TBC Margarita (300 cal) ........ $13.00
SABÉ Blanco, Fresh Lime Juice, & House-made Simple Syrup
TBC Michelada (295-475 cal) ........ $13.00
Select Beer (please ask servers for beer recommendations), Clamato, Tabasco, Fresh Lime Juice, & House Michelada Seasoning

†AVISO IMPORTANTE: Esta instalación ofrece ostras crudas de diferentes regiones de los USA tales como, pero no limitados, al Noroeste del Pacifico, Costa Este y el Golfo de México. Consumir ostiones y cualquier carne cruda o poco cocida, aves, mariscos o huevos pueden causar una enfermedad grave y hasta la muerte en las personas que padecen de enfermedades del higado, cancer u otras enfermedades cronicas que debilitan el sistema inmunologico. Si usted come ostras crudas y se enferma, debe buscar atencion medica inmediatamente. Si usted cree estar en peligro, debe consultar a un medico.

# The Boiling Crab®

Burbank, CA • (747) 201-3346

## Git DOWN 'n' DIRTY...

Your fresh catch is steamed or boiled in our Cajun-style blend of spices, then tossed with one of our signature seasonings for some dirty fun.



BLUE CRAB (10-780 cal) ........ $ Market Price
(seasonal)

RAW OYSTERS* (120 cal) ........ $17.00 / 6 pcs.

(110 cal) ........ $30.00 / 12 pcs.

DUNGENESS CRAB (330-1110 cal) ........ $ Market Price
(seasonal)

SNOW CRAB LEGS (100-820 cal) ........ $ Market Price

KING CRAB LEGS (101-810 cal) ........ $ Market Price

LOBSTER (210-1160 cal) ........ $ Market Price
(seasonal)

SHRIMP (130-860 cal) ........ $ Market Price

CRAWFISH (10-780 cal) ........ $ Market Price
(seasonal)

CRAWFISH (FROZEN, 70-790 cal) ........ $ Market Price

CLAMS (91-820 cal) ........ $14.00 / LB.

MUSSELS (160-570 cal) ........ $14.00 / LB.

## Pick a Seasoning!

RAJUN CAJUN (original)

LEMON PEPPER

GARLIC SAUCE

THE WHOLE SHA-BANG!® (mix all three)

EXTRA JUICY (820 cal) ........ $4.50
WILL BE ADDED TO SEAFOOD BAG ONLY, LIMITATIONS APPLY.

## How SPICY can you go?

NON SPICY (plain 'n' simple)

MILD (just a kick)

MEDIUM (it's gettin' HOT 'n here)

XXX (I can't feel my mouth)

## Want to get NAKED?

TBC NAKED™ CRAWFISH or SHRIMP (310-580 cal)
Peel & eat crawfish or shrimp. Made without our signature sauces. Includes corn, potato, sausage, and whole garlic cloves. Both are available by the pound ONLY.

TBC HALF NAKED™ CRAWFISH or SHRIMP (300-530 cal)
Peel & eat crawfish or shrimp. Made with our signature Lemon Pepper seasoning. Includes corn, potato, sausage, and whole garlic cloves. Both are available by the pound ONLY.

Please ask your server for pricing.

*WARNING: This facility offers raw oysters from different regions of the USA such as, but not limited to, the Pacific Northwest, East Coast, and Gulf of Mexico. Eating these oysters may cause severe illness and even death in persons who have liver disease, cancer or other chronic illnesses that weaken the immune system. If you eat raw oysters and become ill, you should seek immediate medical attention. If you are unsure if you are at risk, you should consult your physician.

## I like it FRIED!

Each selection is made to order, hand-tossed in our homemade batter and fried to perfection. *All baskets include Cajun or LP fries (no substitutions).*

FRIED SOFTSHELL CRAB BASKET* (830 cal) ........ $16.00

FRIED CATFISH BASKET* (1510 cal) ........ $12.00

FRIED SHRIMP BASKET* (780 cal) ........ $14.00

CHICKEN TENDERS BASKET* (1180 cal) ........ $10.00

KIDS' CHICKEN TENDERS BASKET* (650 cal) ........ $6.00

FRIED CALAMARI (810 cal) ........ $10.00

FRIED OYSTERS (410 cal) ........ $12.00

SHA-BANG BANG SHRIMP (1080 cal) ........ $12.00

HOT WINGS (CAJUN or LEMON PEPPER, 820 cal) ........ $11.00 / 6 pcs.

(CAJUN or LEMON PEPPER, 1260 cal) ........ $17.00 / 10 pcs.

## EXTRAS

GUMBO (190-180 cal) ........ $7.50

EXTRA SHRIMP OR SAUSAGE ........ $0.50

CORN ON THE COB (90-370 cal) ........ $1.75 / each

SAUSAGE (540 cal) ........ $7.00 / link

POTATOES (140-550 cal) ........ $2.50 / 3 pcs.

HARD-BOILED EGGS (240 cal) ........ $4.00 / 3 eggs

CRABBER FRIES (780 cal) ........ $15.00

(455 cal) ........ $9.00 / half order

CAJUN FRIES (580 cal) ........ $6.50

LEMON PEPPER FRIES (580 cal) ........ $6.50

SWEET POTATO FRIES (690 cal) ........ $7.00

STEAMED RICE (370 cal) ........ $2.50

EXTRA CONDIMENTS (30-400 cal) ........ $0.75 / each
Garlic Sauce, Ketchup/Mayo, Mayo, G's Sea-Sauce, BBQ, Ranch, Tartar, Cocktail

## THIRSTY?

ASSORTED SODAS & TEAS (0-310 cal) ........ $3.00
Coke, Diet Coke, Sprite, Root Beer, Fanta (Orange), MinuteMaid Lemonade, Hi-C Fruit Punch, Mr. Pibb, Green Tea (Sweetened), Black Tea (Sweetened or Unsweetened), Raspberry Tea (Sweetened)

DOMESTIC BEERS (110 cal) ........ $5.50
Bud Light

IMPORTED / SPECIALTY BEERS (96-247 cal) ........ $6.00
Corona, Modelo, Pacifico, XX, Heineken, Stella Artois, New Castle, Blue Moon

TBC MARGARITA (300 cal) ........ $12.00
SABÉ Blanco, Fresh Lime Juice, & House-made Simple Syrup

TBC MICHELADA (330 cal) ........ $11.00
Select Beer (please ask servers for beer recommendations), Clamato, Tabasco, Fresh Lime Juice, & House Michelada Seasoning

# EXHIBIT C

**Exhibit C**

**<u>Genuine THE BOILING CRAB Signage</u>**







THE BOILING CRAB


THE BOILING CRAB
The Boiling Crab
9015


THE BOILING CRAB


THE BOILING CRAB
OPEN
TO GO


The Boiling Crab
OPEN
LOUISIANA
CRAWFISH


The Boiling Crab

# EXHIBIT D

# Exhibit D

## THE BOILING CRAB Federal Trademark Registrations

Digitally Signed By: United States Patent and Trademark Office
Location: United States Patent and Trademark Office
Date: 2022.06.05 06:00:57 -04'00'

United States of America
United States Patent and Trademark Office

THE BOILING CRAB

**Reg. No. 3,256,219**
**Registered Jun. 26, 2007**
**New Cert. Jun. 21, 2022**
**Int. Cl.: 43**
**Service Mark**
**Principal Register**

BOILING CRAB FRANCHISE CO., LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
5811 McFadden Avenue
Huntington Beach, CALIFORNIA 92649

CLASS 43: RESTAURANT SERVICES

FIRST USE 4-9-2004; IN COMMERCE 4-9-2004

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "CRAB"

SER. NO. 78-954,843, FILED 08-17-2006

Katherine Kelly Vidal
Director of the United States
Patent and Trademark Office

Digitally Signed By: United States Patent and Trademark Office
Location: United States Patent and Trademark Office
Date: 2022.06.05 06:01:46 -04'00'

# United States of America
## United States Patent and Trademark Office

The Boiling Crab

**Reg. No. 4,174,077**
**Registered Jul. 17, 2012**
**New Cert. Jun. 21, 2022**
**Int. Cl.: 43**
**Service Mark**
**Trademark**
**Principal Register**

BOILING CRAB FRANCHISE CO., LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
5811 McFadden Avenue
Huntington Beach, CALIFORNIA 92649

CLASS 43: Restaurant services

FIRST USE 4-9-2004; IN COMMERCE 4-9-2004

The mark consists of the words "THE BOILING CRAB" around the graphic depiction of a crab.

OWNER OF U.S. REG. NO. 3256219

No claim is made to the exclusive right to use the following apart from the mark as shown: THE WORD "CRAB" OR THE PICTORIAL REPRESENTATION OF A CRAB

SER. NO. 85-332,952, FILED 05-27-2011

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office

Digitally Signed By: United States Patent and Trademark Office
Location: United States Patent and Trademark Office
Date: 2022.07.24 06:00:38 -04'00'

# United States of America

## United States Patent and Trademark Office

# THE BOILING CRAB

**Reg. No. 4,491,054**

**Registered Mar. 04, 2014**

**Amended Aug. 09, 2022**

**Int. Cl.: 43**

**Service Mark**

**Principal Register**

Boiling Crab Franchise Co., LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
5811 McFadden Avenue
Huntington Beach, CALIFORNIA 92649

CLASS 43: Restaurant services

FIRST USE 4-9-2004; IN COMMERCE 4-9-2004

The color(s) blue and red is/are claimed as a feature of the mark.

The mark consists of the words "THE BOILING" in red letters and the word "CRAB" in blue letters.

OWNER OF U.S. REG. NO. 3256219, 4174077, 4080202

No claim is made to the exclusive right to use the following apart from the mark as shown: "CRAB"

SER. NO. 86-020,124, FILED 07-25-2013

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office

# United States of America

## United States Patent and Trademark Office

The Boiling Crab

**Reg. No. 5,374,534**

**Registered Jan. 09, 2018**

**Corrected Oct. 29, 2024**

**Int. Cl.: 43**

**Service Mark**

**Principal Register**

Boiling Crab Franchise Co., LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
5811 McFadden Avenue
Huntington Beach, CALIFORNIA 92649

CLASS 43: Restaurant services

FIRST USE 4-9-2004; IN COMMERCE 4-9-2004

The color(s) black and red is/are claimed as a feature of the mark.

The mark consists of the words "THE BOILING CRAB" in black around the stylized drawing of a crab in red outlined in black with two small black eyes.

OWNER OF U.S. REG. NO. 3256219, 4174077, 4080202

No claim is made to the exclusive right to use the following apart from the mark as shown: "CRAB" OR THE PICTORIAL REPRESENTATION OF THE CRAB

SER. NO. 87-468,007, FILED 05-30-2017

Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office

# EXHIBIT E

**Exhibit E**

**<u>Genuine THE BOILING CRAB Collateral</u>**










FRESH OYSTERS
The Boiling Crab
The Boiling Crab
The Boiling Crab


Fried oysters
Fried calamari
Cajun wings
Sweet potato fries
Lp wings
Cajun fries
The Boiling Crab
www.theboilingcrab.com
Keep the World Healthy. Recycle.

# EXHIBIT F

# Exhibit F

## Genuine THE BOILING CRAB Website






## OUR STORY

It all began in a little Southeastern Texas town called Seadrift. With a population of just 2000, Seadrift was home to Yo'Daddy and his family of crabbers and fishermen. They labored in their boats year-round, catching oysters, crab and shrimp for the seafood industry. As toiling as the work was, every weekend the men would come home with their catch of the week to enjoy – they boiled crawfish and crabs, shucked raw oysters, grilled fresh fish – always with a beer in hand.

In 1995 Yo'Daddy caught the best catch of his life, Yo'Mama. The consummate Midwestern girl from Kansas, Yo'Mama hadn't had much exposure to such seafood delicacies – that is, until she met Yo'Daddy. But, she did have the natural inclination to have friends and family over for joyous occasions that were always surrounded by good food aplenty. And one thing Yo'Mama does know is how to EAT!

With their flair for having a good time, warm hospitality and passion for excellent seafood, Yo'Daddy and Yo'Mama opened the first Boiling Crab in 2004. Now family and friends (and you, too!) can experience the fun and taste of a backyard crab fest in your own neighborhood. Their dream – that The Boiling Crab have the "best tail in town" and be the biggest ass-pinching, head-sucking venue this side of Mississippi – has become a reality.

So come visit your nearest Boiling Crab for bold flavors, fresh seafood, and plenty of Dirty Fun!








© Copyright 2026 | All Rights Reserved | Terms of Use | Privacy Policy | Cookie Policy | Consent Preferences | Accessibility Statement
**Questions?** U.S.: contact@theboilingcrab.com | Australia: general@theboilingcrabau.com

# EXHIBIT G

**Exhibit G**

**Crab Pub Menus**



# CRAB PUB

## COMBINATIONS

ALL COMBOS INCLUDE
CORN (2), POTATOES (2), & PORK SAUSAGES (4)

**COMBO #1 .................51**
MIX AND MATCH ANY 3 FROM BELOW:
- CRAWFISH (LIVE $2 EXTRA) ..(1 LB)
- SHRIMP (HEADLESS $2 EXTRA) .(1 LB)
- MUSSEL ....................(1 LB)
- CLAM ......................(1 LB)

**COMBO #2 .................57**
- SNOW CRAB LEGS ...(1 LB)

PICK 1 FROM BELOW:
- CRAWFISH (LIVE $2 EXTRA) ..(1 LB)
- SHRIMP (HEADLESS $2 EXTRA) .(1 LB)
- MUSSEL ....................(1 LB)
- CLAM ......................(1 LB)

**COMBO #3 .................71**
- KING CRAB LEGS ..(1 LB)

PICK 1 FROM BELOW:
- CRAWFISH (LIVE $2 EXTRA) ..(1 LB)
- SHRIMP (HEADLESS $2 EXTRA) .(1 LB)
- MUSSEL ....................(1 LB)
- CLAM ......................(1 LB)

**COMBO #4 .................55**
- 1 KING & 1 SNOW CRAB LEGS (ONE LEG, ONE CLUSTER)

**COMBO #5 .................83**
- THE CRAB PUB COMBO
- 1 KING CRAB LEG
- 1 SNOW CRAB LEG
- 1/2 LB CRAWFISH (LIVE $1 EXTRA)
- 1/2 LB SHRIMP (HEADLESS $1 EXTRA)
- 1/2 LB MUSSEL
- 1/2 LB CLAM

## BOIL SPECIALTY

OUR SEAFOOD IS SOLD BY WEIGHT
PRICES ARE LISTED PER LB.

**STEP #1: PICK YOUR SEAFOOD**

| | |
|---|---|
| DUNGENESS CRAB (CLUSTER) | 38 |
| WHOLE BLUE CRAB (2-3 PER LB) | 27 |
| KING CRAB LEGS | 57 |
| SNOW CRAB LEGS | 37 |
| LOBSTER TAIL (5 oz) | 23 |
| CRAWFISH (W/CORN & SAUSAGES) | SEASONAL |
| SHRIMP W/ HEAD ON | 17 |
| SHRIMP W/ HEAD ON (1/2 LB) | 10 |
| SHRIMP - HEADLESS | 20 |
| SHRIMP - HEADLESS (1/2 LB) | 14 |
| SHRIMP & CRAWFISH MIX | 17 |
| CLAM | 16 |
| MUSSEL | 16 |

**STEP #2: PICK YOUR SEASONING 'N' SPICE LEVEL**

## SEASONING

- CAJUN
- LEMON PEPPER
- GARLIC BUTTER
- THE PUB STYLE (ALL OF THE ABOVE)
- OLD BAY
- WEED-BI WASABI
- PLAIN BOIL ONLY

## SPICY METER

- MILD
- 1/2 MED
- MED
- SPICY
- EXSPICY

Notice: Consuming raw oysters and seafood may cause severe illness and even death in persons who have liver disease (i.e. Alcoholic cirrhosis),cancer or other chronic illness that weaken the immune system. If you eat raw oysters and become ill, you should seek immediate medical attention. If you are unsure if you are at risk, you should consult your physician.

18% SERVICE CHARGE WILL BE ADDED TO PARTIES OF 6 OR MORE

# CRAB PUB



## COMBINATIONS

ALL COMBOS INCLUDE
CORN (2), POTATOES (2), & PORK SAUSAGES (4)

### COMBO #1 ..................$53 (MP)

MIX AND MATCH ANY 3 FROM BELOW:

- CRAWFISH (LIVE $2.50 EXTRA) (1 LB)
- SHRIMP (HEADLESS $2.50 EXTRA) (1 LB)
- MUSSEL ..................(1 LB)
- CLAM ......................(1 LB)

### COMBO #2 ..................$59 (MP)

- SNOW CRAB LEGS ...(1 LB)

PICK 1 FROM BELOW:

- CRAWFISH (LIVE $2.50 EXTRA) (1 LB)
- SHRIMP (HEADLESS $2.50 EXTRA) (1 LB)
- MUSSEL ..................(1 LB)
- CLAM ......................(1 LB)

### COMBO #3 ........................ (MP)

- KING CRAB LEGS ..(1 LB)

PICK 1 FROM BELOW:

- CRAWFISH (LIVE $2.50 EXTRA) (1 LB)
- SHRIMP (HEADLESS $2.50 EXTRA) (1 LB)
- MUSSEL ..................(1 LB)
- CLAM ......................(1 LB)

### COMBO #4 ..................$61 (MP)

- 1 LOBSTER TAIL, 1 SNOW CRAB LEGS, & 1/2 LB SHRIMP (ONE TAIL 5OZ, ONE CLUSTER, 1/2 LB SHRIMP)

### COMBO #5 ........................ (MP)

- 1 KING CRAB LEG OR LOBSTER TAIL
- 1 SNOW CRAB LEG
- 1/2 LB CRAWFISH (LIVE $1.50 EXTRA)
- 1/2 LB SHRIMP (HEADLESS $1.50 EXTRA)
- 1/2 LB MUSSEL
- 1/2 LB CLAM

## BOIL SPECIALTY

OUR SEAFOOD IS SOLD BY WEIGHT
PRICES ARE LISTED PER LB.
PRICES ARE SUBJECT TO CHANGE.

### STEP#1: PICK YOUR SEAFOOD

| | |
|---|---|
| DUNGENESS CRAB (CLUSTER) | $39 (MP) |
| KING CRAB LEGS | (MP) |
| SNOW CRAB LEGS | (MP) |
| LOBSTER TAIL (5 OZ) (W/CORN POTATO & SAUSAGE) | $26 (MP) |
| FROZEN CRAWFISH (W/CORN & SAUSAGE) | $17 (MP) |
| LIVE CRAWFISH (W/CORN & SAUSAGE) [illegible] | (MP) |
| SHRIMP W/ HEAD ON | $18 (MP) |
| SHRIMP W/ HEAD ON (1/2 LB) | $12 (MP) |
| SHRIMP - HEADLESS | $21 (MP) |
| SHRIMP - HEADLESS (1/2 LB) | $15 (MP) |
| SHRIMP & CRAWFISH MIX | $18 (MP) |
| CLAM | $17 (MP) |
| MUSSEL | $17 (MP) |
| SCALLOPS | $47 (MP) |
| SCALLOPS (1/2 LB) | $24 (MP) |

MARKET PRICE BY POUND.
ALL WEIGHT MEASURED ARE PRECOOKED.

## SEASONING

### STEP#2: PICK YOUR SEASONING 'N' SPICE LEVEL

- CAJUN
- LEMON PEPPER
- GARLIC BUTTER
- THE PUB STYLE (ALL OF THE ABOVE)
- OLD BAY
- OLD BAY GARLIC BUTTER
- PLAIN BOIL ONLY

## SPICY METER

- MILD
- 1/2 MED
- MED
- SPICY
- EXSPICY

**Notice:**
Food Allergies & Preferences: Guests are responsible for informing staff of any allergies or dietary restrictions before placing an order.
All Sales Are Final: Once an order has been placed and payment has been processed, it cannot be canceled, refunded, or exchanged.
For health and safety reasons, we cannot accept returned food or beverages once they have been served or taken off the premises.

18% SERVICE CHARGE WILL BE ADDED TO PARTIES OF 6 OR MORE


STARTERS
RAW HALF SHELL OYSTERS OR SCALLOPS
• ½ DZ. $13.99 • 1 DZ. $20.99
GRILLED OYSTERS • ½ DZ. $16.99 • 1 DZ. $27.99
ALL FRIED FOODS HAVE SOME CAJUN SPICE
SHRIMP COCKTAIL . . . . . . . . . . . 10
ONION RINGS . . . . . . . . . . . . . . . 5
CRAB POPPERS . . . . . . . . . . . . . 7
SWEET CORN POPPERS . . . . . . . . 6
SWEET POTATO FRIES . . . . . . . . . 6
CAJUN FRIES . . . . . . . . . . . . . . . 5
WAFFLE FRIES . . . . . . . . . . . . . . 6
MIXED FRIES . . . . . . . . . . . . . . . 6
FRIED SHRIMP . . . . . . . . . . . . . . 10
FRIED PICKLES . . . . . . . . . . . . . 5
FRIED OKRA . . . . . . . . . . . . . . . 5
FRIED GREEN BEANS . . . . . . . . . 6
CHICKEN TENDER COMBO (KIDS ONLY). 8
FRIED OYSTERS BASKET . . . . . . 12
FRIED CALAMARI BASKET . . . . . . 9
FRIED CATFISH BASKET . . . . . . . 12
HOT JUICY WINGS (NO FRIES) . . . 9
CAJUN CHICKEN WINGS BASKET. . 9
FRIED SHRIMP BASKET . . . . . . . . 9
(BASKETS ARE SERVED WITH CAJUN FRIES)
(SUB FOR SWEET POTATO FRIES OR ONION RINGS $2,
WAFFLE FRIES $1)
SEASONING
• GARLIC BUTTER
• LEMON PEPPER
• CAJUN
• THE PUB STYLE (ALL OF THE ABOVE)
• OLD BAY
• PLAIN BOIL ONLY
• EXTRA SAUCE $3
CRAB PUB
BOIL SPECIALTY
OUR SEAFOOD IS SOLD BY WEIGHT
PRICES ARE LISTED PER LB.
STEP#1: PICK YOUR SEAFOOD
DUNGENESS CRAB (WHOLE) . . . SEASONAL
BLUE CRAB (WHOLE 2-3 PER LB) . SEASONAL
KING CRAB LEGS . . . . . . . . . . . . . MP
SNOW CRAB LEGS . . . . . . . . . . . . MP
LOBSTER (WHOLE) . . . . . . . . . . . . MP
CRAWFISH (W/ 1 CORN & 2 SAUSAGES) . SEASONAL
SHRIMP W/ HEAD ON . . . . . . . . . . MP
1/2 SHRIMP W/ HEAD ON . . . . . . . . MP
SHRIMP & CRAWFISH MIX . . . . . . . . MP
CLAM . . . . . . . . . . . . . . . . . . . . . MP
MUSSEL . . . . . . . . . . . . . . . . . . . MP
STEP#2: PICK YOUR
SEASONING 'N' SPICE LEVEL
SPICY METER
• MILD • 1/2 MED • MED
• SPICY • EXSPICY